Good morning, Your Honors. May it please the Court, Carolyn Wiggin on behalf of Mr. Martinez Santoyo, and I will attempt to reserve five minutes for rebuttal. Very well. Thank you. Your Honors, I'd like to start this morning by addressing the lapse of time provision. We all agree Article VII of the United States-Mexico Extradition Treaty includes the language that extradition is forbidden if it is barred by the lapse of time in either the requestor or the requested country. In this case, the United States is the requested country. So the most well-known, famous, and fundamental of our nation's time bars to prosecution is the Speedy Trial Clause of the Sixth Amendment. I think that just looking at the plain language of the treaty, the word barred by a time lapse covers the Sixth Amendment Speedy Trial Clause. This Court's analysis on that could begin and end just with the plain language of the treaty itself. Can you walk us through the—we want to get to the applicability of Speedy Trial in this context, but your argument that Speedy Trial has—Speedy Trial rights have been violated here? I mean, we've got a situation where, first of all, a question about when it begins to run, and where the defendant leaves the country. And my guess is that's not something that necessarily counts against the government in a Speedy Trial analysis. So how does your client win in a Speedy Trial analysis on the merits? Well, the Speedy Trial Act time begins with either an arrest or an accusation. So in this case, Mexico's issuance of the formal arrest warrant is treated sort of the same as an indictment in the United States. Well, we've said that for purposes of the statute of limitations time bar. Why is that the best point at which to start the clock for Speedy Trial purposes? I think for statute of limitations, it actually starts with the offense conduct. And, you know, so that can— Well, I'm sorry. The Sanchez case is one that's involving when the statute begins to run, right? We don't have a case that says when, as we wouldn't, when the Speedy Trial Act should be considered to begin running in Mexico. Well, okay. Mexico does not have an equivalent to the Sixth Amendment Speedy Trial clause. We have lots of cases in the United States saying your Sixth Amendment Speedy Trial time begins with either arrest or formal accusation. And, I mean, neither party talked about the Supreme Court's 2016 decision in Betterment, but that kind of gives us a modern analysis of these times. They say statute of limitation covers you from offense conduct till accusation. Sixth Amendment covers you from accusation or arrest until conviction. And then after conviction, your Sixth Amendment right is over in the United States. So the clock starts in 2014? Correct.  Is the space—and do you believe that Mexico, under the Speedy Trial clause—and one of the reasons I think it's worth going through this is it begins to get to some of the complications of mapping American constitutional doctrine on Mexican criminal procedure. So the clock starts from 2014. Mexico's on the clock there, even though Mr. Santoyo has left the jurisdiction? Well, if he had remained in Mexico, then they wouldn't be dealing with the Sixth Amendment. So he's left the jurisdiction, so the only way for them to get him back is the extradition treaty. And it's the language in the extradition treaty saying you've got to honor the time limits not only of the requestor country, but the requested country, United States. Sure. So the California statute of limitation. So the equivalent would be the California statute of limitations for a similar offense would apply. But no one's raised it, so we're assuming it doesn't. Well, yeah. I mean, for murder, California and the federal government don't really have a statute of limitations. Okay. So you think that Mexico's on the Speedy Trial clock from 2014 to now? I mean, if he had remained in Mexico, the Speedy Trial clock is irrelevant. Well, if he had remained in Mexico, I guess I'm trying to think of, let me know if you're aware of a case where if someone is, if this were a trial in the United States and someone were indicted and then leaves the country for a decade, I'm not sure that the Barker inquiry would count that against the government. There are many cases where that happens. Doggett would be the one that's the most, the Supreme Court case we talk about in the briefs, but there are plenty of lower court cases where this is where the United States is seeking someone who is abroad. But if they file the indictment and then they do nothing to try to do extradition for several years, even though they know the person isn't in their home country, that counts against them under Speedy Trial time. So, yes, in our own courts, we count this delay in extraditing against your Speedy Trial time, and if it's unreasonably long, then the Sixth Amendment can lead to a dismissal of the charges. Okay. Now, that suggests the clock ends when on the extradition request? Well— I mean, you've got two sovereigns who are not necessarily able to coordinate their interests in a Speedy Trial, so how does that work? Well, so you would have to look at why—I mean, if you agree that— And again, we're not saying there's an independent Sixth Amendment right in these extradition proceedings, but the clause within the U.S.-Mexico one we're saying incorporates the Sixth Amendment. Right. Your claim is that Mexico and the United States agreed that both sides would need to go through, that at least the United States would need to go through this Speedy Trial inquiry— Right, right. —for any extradition. Right. So we know that the accusation is made in, like, January of 2014 is when the arrest warrant issues in Mexico. They know he's in California, and so I think the extradition court then says, was this an unreasonable delay to wait until basically 2021 to try to get him back to Mexico? And, you know, then you go through the Barker v. Wingo factors, which is length of delay, reason for delay, when did the accused assert their rights, and prejudice from delay. But I don't understand your briefs to speak to anything other than the length of the delay. I mean, you have about a paragraph on the merits here. Is that enough for us to work with? I think the trial court—or the district court here just basically said the Sixth Amendment doesn't apply, so at district court there was no real analysis of this. And one solution could be to say the Sixth Amendment applies, but the district court didn't fully weigh these factors, so we're sending it back down for that, and we would accept that resolution as perfectly fair. If there are no more questions about that aspect of the case, I will move on to probable cause. Again, Article III of the Extradition Treaty makes it clear that for extradition to occur, the government must produce enough evidence to justify committing a person for trial for the offense for which he is accused according to the laws of the request-ed country here in the United States. So that means the government must produce evidence as to each element of the offense. We argue that here there's simply no evidence as to the unfair advantage. Mexican law spells out several different things that can constitute unfair advantage. There's simply no evidence in this case that meets that element, so we don't think they've met their probable cause standard here, and for that reason, extradition should not have been ordered. I can reserve my time, I suppose, or I can just briefly say, first, I'll just be very brief on my final two issues. We believe that the forensic report showing the gunshot residue on Mr. Miranda's hands, that report was referenced in the extradition packet as part of Mexico's evidence. Our office obtained the actual report and translated it into English and sought to submit it in the hearing. We think that would have been explanatory evidence. It didn't contradict any of the government's evidence. We think it should have been admitted as part of the totality of circumstances that could support or fail to support probable cause. And then finally, as to our discovery request, our position is that when the government is carrying out its duties in extradition proceedings, it has to comply with the due process clause. We know that Brady itself doesn't apply to extradition, but we think due process does, and that if the government had exculpatory evidence or the evidence we sought, it should have produced it. Thank you. Thank you.  May it please the Court, Elliot Wong on behalf of the United States. We've been using the phrase lapse of time in our extradition treaties for over 100 years and throughout dozens of different treaties. We've always understood that term to refer to the statute of limitations that applies to the case. And the courts who have considered whether that term should be more expansively interpreted to incorporate the Sixth Amendment's PD trial fairly uniformly have rejected that idea. And there are good reasons for this. As Judge Johnstone pointed out, the difficulties in mapping U.S. constitutional doctrine onto foreign procedures is something that this Court is wary to do. This Court in the Saines case has cautioned against looking into the procedures of a foreign criminal proceeding when we're talking about extradition. And that's because, especially when we're talking about a civil law country like Mexico, their criminal procedures are remarkably different from ours. And it's really hard for us to be able to parse, without making significant errors, exactly how those procedures work and in justifying the delay. The Barker test is really inapplicable to the situation and would be, as I think Judge Johnstone is struggling with with some of these questions, it's really hard to apply that because it requires looking into the reason for the delay and the prejudice to the fugitive. Don't we have to do that a little bit in cases like Saines even in order to try to figure out, I mean, instead we should look at the restatement? That's some third source of law to understand for statute of limitations purposes how the time goes. I mean, there are questions about tolling. They're equally or at least similarly complicated questions, are there not, if we just view lapse of time as statute of limitations? I agree that there are some questions involved with the application of the statute of limitations, but I don't think that they're similarly complicated. So with the statute of limitations arguments, what we have is we normally look to authoritative interpretations of foreign law by that foreign government, whether that be the prosecutor or foreign court. And those questions, we usually defer to their interpretation of their own laws, their familiarity with those laws, their normal applicability. It's something that they are more versed on doing. And as a matter of comedy and reciprocity, this court has fairly uniformly held against looking too far into the foreign court's interpretation of its own laws. Would you agree that the arrest warrant here was similar to an accusation or indictment, setting aside the speedy trial question? Correct, and that would be from the Saines case, Your Honor. Okay. So when we're talking about the plain language in the text of the provision, just to respond to that, so one of the things that Appellant says in the reply brief on page 19 is that the 1978 version of the treaty switched from using the language of limitations to using lapse of time. And Appellant suggests that this is a significant change that was intended by the parties to change the meeting and, therefore, expand the definition of that provision such that it could cover U.S. constitutional provisions. And I think looking to the Martinez case in the Sixth Circuit, they did a really good job of walking through the textual arguments, the historical arguments, the ratification arguments in the context. And really what they said is that there was no change that was flagged as being substantive in the ratification process. And Judge White, in her concurrence, further stated that even though there was a switch in the English word from limitations to lapse of time, in the Spanish there was none. And both versions, the English and the Spanish, are both authoritative interpretations of the same treaty, such that the Spanish word prescripción, which is a civil law term that's generally applied to the statute of limitations, remained from the prior version to the 1978 version. And then further, as Judge Sutton pointed out in the majority opinion from the Martinez case, really the lapse of time phrase, although it doesn't necessarily preclude other delay-based doctrines, it's best read to only encompass the statute of limitations because that is the one doctrine that really holds to a fixed time limit. And really, as the Supreme Court said in Barker, the Sixth Amendment Speedy Trial Clause is a doctrine that is amorphous, vague, and really difficult to pin down exactly when a violation has occurred. And really what that analysis entails for domestic cases would be even harder to apply to the extraterritorial context because what that would require this court to do, and United States courts around generally, is to pass judgment on the diligence, delay, or bad faith of foreign prosecutors, of foreign investigators, of foreign courts, and then of foreign bureaucrats who are actually responsible for forwarding the extradition request. But isn't that ends up being, at least can be, kind of a two-way street if we think about, I'm not sure whether it's Doggett or these cases where it's the other way around, where the U.S. is facing speedy trial questions for its extradition request. Doesn't a court need to inquire to some extent what's going on in that other country that's occasioning the delay? No, Your Honor. So the only question before the court would be the statute of limitations issue. And the broader question about whether an extradition is timely is a diplomatic consideration for the Secretary of State at the end of the day when deciding as a matter of diplomatic principles to actually do the extradition once everything has been properly certified. And I'd also point to the court's prior decisions in Cameron and Krasselberg, which did involve this court's rejection of the idea of doing a sub silencio insertion of U.S. constitutional provisions into a different provision of an extradition treaty. Those cases both involved in the Cameron case was an argument that due process applied in a remedies and recourses provision. And further, the Krasselberg case involved not only due process but also the constitutional speedy trial right. And in both cases, it was a significant expansion of that right, but such that it was tacitly done, and the court rejected that interpretation at both times. The drafting and ratification history similarly supports rejecting appellant's arguments in this case. There are numerous other extradition treaties that the United States has signed, roughly contemporaneous with the Mexico Treaty in 1978, all of which, not all of which, but many of which actually explicitly reference the lapse of time provision and tie that to the statute of limitations provision. And some of the cases that or some of the situations that were pointed out in the Martinez case, the treaties that we signed with Colombia, with Costa Rica, Argentina, and South Korea, around the timeframe of the U.S.-Mexico Treaty, those all explicitly tie those two rights together, which is to say tying the lapse of time language with the speedy trial or, excuse me, with the statute of limitations, not including anything else related to the Speedy Trial Act or the constitutional provisions of the Speedy Trial Clause. And further, I'd just point out that the — this would — appellant's argument leads to a slippery slope. Any delay-based provisions, the constitutional speedy trial right, if her arguments are accepted, then there's no reason to limit that to the constitutional Sixth Amendment right and not further incorporate other delay-based doctrines, such as the Speedy Trial Clause or common law doctrines of latches. And the reciprocation for that would be the incorporation of any other similar delay-based provisions under foreign law that would be applied reciprocally. Well, Mr. Wong, I guess as I suppose that adds a wrinkle to it, so would you concede that the California statute of limitations would be the operative lapse of time provision in the reciprocal provision in the treaty here? It could be looked to for a statute of limitations, Your Honor, but in this case what the district court did is look at the Federal statute of limitations for, I believe, a secondary murder. Well, yeah, I guess that's just it because the treaty refers to the party, the country, but we're dealing here with two federal systems. I'm not familiar enough with Mexico to determine how much its criminal procedure differs among its states, but among our states the practical problem you're introducing could potentially sweep in some state doctrines, or is it clear enough that we always look to the — here's another area where I don't know whether we use a categorical approach or not, but do we always look at the federal offense? Is that the government's view of the treaty here to find the statute of limitations? No, Your Honor. The federal offenses are easy to analogize, but there are cases in which this court has looked to comparable state law offenses as well. Okay. So once the door is open to comparable state law and we begin to look at unwritten doctrine, could that potentially then bring us into inquiries at the state level, which would be even more complicated? If we want to sweep in the Speedy Trial Act, I think this goes to your point. If we're sweeping in any lapse of time doctrine, does that really require us to begin looking at all sorts of other things, including California state doctrine or other things that would make this even more complicated? There's been no case law, to my knowledge, that has actually gone that far into the weeds on that issue, and for the most part the statute of limitations from the United States side has always been a fairly straightforward analysis. The courts have been, I think, well-equipped to deal with that, since they do that in a normal case domestically when we're talking about a United States criminal prosecution. So the analysis isn't that different. The problem turns on whether or not we're actually looking to the foreign criminal procedures, especially when we're talking about a civil law system, which is significantly different from ours. Can I ask that, just to make sure I understand? So let's say somebody did some serious offense, but one that does have a statute of limitations, so not murder, something like kidnapping. Let's say it was 10-year statute of limitations in Mexico, but the equivalent would have a 6-year statute of limitations here. Did I understand correctly? Obviously, you looked at the 10-year statute of limitations. Would you also look to our 6-year statute of limitations, and you wouldn't allow the person to be extradited if it was, like, at 7 or 8 years, before the 10, but after that? Possibly, Your Honor, and that's because some of the treaties only say, lots of time according to the laws of the requesting country. Some of the treaties require both, so that you have to have— This one says according to the laws of the requesting or requested party. Correct. But the statute, I guess I could understand where you would read that, since we are a requested party, but we're not trying to prosecute him for U.S. kidnapping. He's trying to be prosecuted for Mexico kidnapping, and so there's no— It's weird to, like, take the U.S. statute of limitations as applicable to the U.S. crime that you're not trying to prosecute the person for and somehow apply it, but I guess you're saying that our cases have done that? Correct, Your Honor. That seems weird. Okay. All right. Extradition is a strange beast, Your Honor. And then just briefly, touching on the Brady argument, unless there's no further questions about the Sixth Amendment issue, so just briefly with the Brady and Discovery question, this Court's decision in Marino, although done in the 1960s, is still good law. That court said specifically that the Brady rights do not apply in extradition proceedings, and there's good reason for that. Specifically, an extraditee maintains that they have a fair hearing without enjoining the full panoply of rights available to a criminal defendant because the character of the evidence submitted in an extradition proceeding is only akin to a preliminary hearing and not an actual criminal trial, such that the appellant's citations to the Santos case and the Crasham case are not any reason to disturb this Court's decision in Marino. Why wouldn't that change? I mean, we're talking about ultimately due process, which does apply, maybe not in the same way. If the government did participate in the investigation and had evidence that would defeat probable cause. So, Your Honor, I mean, looking to the Sixth Circuit's case in Jemjanic, that's exactly what happened in that case, which is a very weird situation where the government in that case had evidence, exculpatory evidence, in its possession that said in here it would have to be actually explanatory evidence, which would be even kind of maybe more exculpatory than Brady exculpatory. Yeah, so it's hard to come up with an example that would actually satisfy this. The Jemjanic case and even the Sixth Circuit recognized after the fact, that involved a very strange set of circumstances where somebody who was accused of being a fairly notorious Nazi guard was sought by the requesting country, and the United States actually had information, exculpatory information, that the extraditee was not the fugitive who was actually being sought. So that unique situation, I think, was the impetus behind creating that rule in the Sixth Circuit. And since that case came out, there has never been a comparable situation across any other circuits that I'm aware of where we've seen that kind of strange circumstance where the government is actually in possession of exculpatory information that would basically obliterate probable cause and are hiding it from or not disclosing it to the fugitive. And we need not reach that here because the government has taken the position that it has not, right? You agree that the government has not participated in the investigation. Correct. This is not the case to rule on that particular factual circumstance. Unless the court has any further questions. All right. Thank you, counsel. Well, to make it simple, we'll round up to five. Okay. Thank you, Your Honors. And I will try to be brief. I want to spend a little bit of time on the statute of limitations issue. It is sort of the lapse of time issue, which we say covers statutes of limitations and the speedy trial clause. Now, the government says it would be too hard for our courts and inappropriate to delve into Mexican law on these issues. But this treaty, not every treaty, this treaty says look at time lapse laws of the requestor and the requested party. So we are under an obligation to look at Mexican. They don't have the speedy trial clause, but they do have statutes of limitations. They work a little differently than in the United States. So, for instance, in this case, I believe for this type of homicide, what they do is they take the low end and the high end of their statutory range, and they say the middle of that is basically the statute of limitations. So this wasn't controversial in this case, but our court, if we had raised it, we would have had to go through an analysis of, like, is this really the Mexican statute of limitations? If the case had gone past that statute of limitations under Mexican law, we would say under the U.S. extradition treaty, this person cannot be extradited. And we look at U.S. statutes of limitations. So we're already saying in this treaty, we want federal magistrates to look at the foreign law and the domestic law. I don't think the statute of limitations laws is less complicated than speedy trial. I think it's more complicated. So this obligation was already written into this treaty. Now, the government says— I guess, Ms. Wiggin, why isn't that enough, then? I get your point that there may be some equities involved in the long delay here, but it sounds like the parties agree that there are no statute of limitations issues on either side of the border here. This is a very serious crime. Well, there is a speedy trial issue, and I would say the plain language of the treaty says— and this is the English-language version of the treaty that our president entered, our Senate ratified, that's what this Court should look to. The plain language says lapse of time of either country. I think at the time it was written, the only published— the only federal case on point interpreting lapse of time in an extradition treaty was Milano's. That case went undisturbed from 1960 until 1993. The U.S.-Mexico treaty is entered into in 1978. So that's the only interpretation that was out there when the treaty was entered into. And I think the plain language, if you look to that bit of legislative history, and also the fact that— What about—I mean, I see your point that figuring out the lapse of time that would count. It sounds like it's not 10 years. You have to kind of calculate it. It sounds like—I don't take your point at that. But a speedy trial right includes lapse of time. Arguably, and maybe even say that's the most important factor, but it has other things that courts take into account. And so, you know, the treaty language says barred by lapse of time. It doesn't say other things, right? It could be barred by something else, and it wouldn't count in at least this language. So what about the fact that it has these other factors? And then I think the government's point was that if you allow it to where— I think your argument is basically if lapse of time is just one of the things you take into account, then it's covered by this treaty. I think that has to be your argument if you want to get a speedy trial right. So what about other—would it pull in other things, other federal rights that take into account lapse of time like latches, et cetera? Well, I think the only—in criminal cases in the United States, the only lapse of time rules I'm aware of are statute of limitations and Sixth Amendment speedy trial. So I don't—I think because those are— Would lapse of time be, A, something you would take into account in a malicious— I know you never went on malicious prosecution, but, like, you know, you say, well, they waited until such and such because, you know, the government— and they did it for some malicious purpose. And so, yes, it's not normally what you think of as even the main factor. But if your argument is that if lapse of time is a part of it, then it covers it, then it does seem like it would pull in other things, perhaps. I don't think it would pull in other federal constitutional rights at trial. I mean, there's nothing about we have a right to a jury trial. Or Mexican rights, right? Mexico doesn't have a right to a jury trial. There's nothing about lapse of time that would pull in the jury trial right or pull in the right against self-incrimination. Lapse of time, I think, is pretty clear language that it's about time. I don't think there's the slippery slope argument works. Well, I'm going to go back to the fact that speedy trial right is not just about time. And you're saying it pulls that in, too, though. I think it's principally about time. You ask about delay, reason for delay, assertion about delay, prejudice from delay. Statute of limitations is about time, but you also look at, well, if the person was fleeing from justice in fugitive status, all that time is taken away from your statute of limitations clock. There can be other things, like if the victim is a child, sometimes that affects your statute of limitations time. So the statute of limitations, just like the speedy trial clause, asks the court to look at time and sometimes weigh other factors. So I don't think it's more hard. Ms. Wiggins, I guess, what's your position on the when the defendant asserted his right for purposes of the Barker analysis? In this litigation, he didn't know about the arrest warrant until he was arrested in 2022. So that's when he's asserted his speedy trial right. And that's just one factor. We're way over. Yeah. I will. Do you want to wrap up? Thank you very much. I will just say one thing in parting, which is that I think this court could make clear that, despite the fact that Marino says Brady doesn't apply in extradition hearings, which is absolutely true, it could say when you do, when the government does possess evidence that obliterates favorable cause, then under the due process clause, it should turn it over to the person named in the extradition petition. All right. Thank you very much, counsel. Thank you both for your briefing and argument. This matter is submitted. The panel is adjourned, but we do have some folks who are going to talk to the law students, and then we'll be back out in a little bit. All rise.
judges: OWENS, VANDYKE, JOHNSTONE